# Ross *v.* The State.

$\frac{82}{141}$  $\frac{65}{79}$

### *Indictment for Burglary.*

1. *General charge on evidence.*—A general charge in favor of the defendant, in a criminal case, is properly refused, when there is any evidence, however weak or inconclusive, from which the jury may infer his guilt.

2. *Proof of burglary* —Under an indictment for burglary, the prosecution having proved the fact that a burglary was committed, the defendant's recent possession of goods stolen from the house at the same time, and his inconsistent statements as to the manner in which he acquired the possession, while the defendant, testifying in his own behalf, states that he purchased the goods from a person unknown to him; the jury might infer the defendant's guilt on this evidence, and therefore a general charge in his favor is properly refused.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case charged, in a single count, that the defendant, William Ross, " with the intent to steal, broke into and entered the dwelling-house, or a building within the curtilage of the dwelling-house, or shop, store, warehouse, or other building of John Moore, in which goods, merchandise, or a cloak [and] pieces of carpet, things of value, were then and there kept for use, sale or deposit." On the trial, as the bill of exceptions shows, issue having been joined on the plea of not guilty, the State introduced John Moore as a witness, who lived in Mobile, and who testified, " that he had a stable in his yard, in which he kept corn and other things of value ; that there were no windows to the stable, and but one door, which was a double door, ordinarily fastened with a chain and padlock ; that when the door was thus locked, a person could not enter the stable, except by prizing open the door, which, being made of lattice-work, would *give* so as to allow a person to pass through ; that he left his house about twelve o'clock on the 21st December, 1886, and returned between six and seven

5

in the evening, when he noticed corn strewn along the floor and outside the stable, and a bucket of corn standing outside of the stable-door; that he had the defendant arrested; that the defendant told him, on the morning after his arrest, where he could find a cloak and a piece of carpet; that he (witness) got the cloak and piece of carpet from the person with whom defendant said he had left them, and carried them to the guard-house; that the defendant told him, at one time, that he had bought the same from another person, and, at another time, that he had won them shooting *craps* from a tramp. Witness testified, also, that the defendant, with a crowd of other negroes, was in the habit of hanging around the corner near the stables." One Davis, the next witness for the State, who drove a delivery-wagon for Hammel & Co., which was put up at night in the stable of said John Moore, testified that, " on the night of December 21st, 1886, he put the wagon in said stable, about six o'clock, and fastened the door in such manner that no one could enter, except by prizing open the lower part of the door; that he left in the wagon a cloak and some pieces of carpet belonging to Mr. Hammel; and that he missed the same from the wagon, when he returned the next morning." Two women were also examined as witnesses on the part of the State, each of whom testified that, " a day or two before Christmas, the defendant showed her the cloak, and told her that he had bought it from another person, but did not mention the name of that person." James Martin, another witness for the State, testified to a conversation between himself and the defendant, while in the guard-house after his arrest, " in which defendant told him where he could find the cloak and piece of carpet, and said that he had bought them from another person, but did not name the person;" and that a policeman was then sent for the things, and returned with them. The defendant, being then examined as a witness in his own behalf, " testified that he purchased the said cloak and carpet from a third person, who was a tall, slight, black man, whom he did not know, nor did he know where that person got the things; that he bought them for $2.80, in the presence of two other persons, one of whom was named Henry Turner, and who had since left Mobile, and that he had $11 at the time, won at playing *craps*." This being " substantially all the evidence," the defendant asked the court, in writing, " to charge the jury that, if they believed all the evidence, they must acquit the defendant." The court refused this charge, and the defendant excepted to its refusal.

[Ross v. The State.]

GREGORY L. SMITH, for the appellant, cited *Amos v. State*, 78 Ala. 502 ; *Clark v. State*, 78 Ala. 474.

THOS. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The charge requested by the defendant was, in our judgment, properly refused by the court. It was on the effect of the evidence, and such a charge ought never to be given by the court unless the evidence is entirely free from conflict as to material facts, so as to authorize no inference repugnant to that embodied in the charge. If there be any evidence, however weak or inconclusive, tending to support the contrary conclusion, such a charge should not be given at the request of either party.

There were facts in evidence, in this case, from which the jury were authorized to infer that the defendant was guilty of the crime charged, which was burglary. In the first place, the recent possession of the goods, which were probably stolen in the commission of the offense, authorized the inference of the party's complicity in the crime charged, unless such guilty possession were explained to the satisfaction of the jury.—*White v. State*, 72 Ala. 195 ; *Henderson v. State*, 70 Ala. 23. The defendant, it is true, testified in his own behalf, that he had purchased the goods from a person unknown. But there was evidence from which the jury might well infer that this explanation was untrue. The admissions made by the defendant to the prosecutor at different times on this subject were entirely inconsistent. He stated at one time that he had purchased the goods from an unknown person, and at another that he had *won* them at a game from "a tramp." These contradictory statements each tended to destroy the credibility of the other, and one of them tended to refute the explanation given by the defendant in his testimony on the stand. Under this state of facts, the court properly left the solution of this conflict to the determination of the jury, by refusing to charge on the effect of the evidence.

Affirmed.